United States District Court
Southern District of Texas

**ENTERED**

April 07, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT J. ROSA and KAREN F. POSEY, Individually and On Behalf of ALL OTHERS SIMILARLY SITUATED,<br><br>        Plaintiffs,<br><br>v.<br><br>AMERICAN WATER HEATER COMPANY and A.O. SMITH CORPORATION,<br><br>        Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-15-1898 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Robert J. Rosa ("Rosa") and Karen F. Posey ("Posey") (together, "Plaintiffs") bring this action against American Water Heater Company ("American Water Heater") and A.O. Smith Corporation ("A.O. Smith") (together, "Defendants"), for breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson-Moss Warranty Act ("MMWA"), and declaration relief, individually and on behalf of all others similarly situated.[1]  Pending before the court are Defendants' Motion to Strike Class Allegations and Brief in Support ("Motion to Strike") (Docket Entry No. 15), and Defendants' Motion

---

[1]See First Amended Class Action Complaint for Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Violation of the Magnuson-Moss Warranty Act and Declaration Relief ("Amended Complaint"), Docket Entry No. 14.

to Dismiss First Amended Complaint and Brief in Support ("Motion to Dismiss") (Docket Entry No. 16).  For the reasons stated below, the Motion to Dismiss will be granted in part and denied in part, and the Motion to Strike will be granted.

### I.   Factual Allegations and Procedural History

American Water Heater manufactures, distributes, and sells residential gas water heaters.[2]  A.O. Smith owns American Water Heater.[3]  Plaintiffs purchased an American Water Heater Company 50-gallon residential gas water heater (Model No. BFG6150S403NOV) (the "Heater") in March of 2012, replacing the existing water heater in their home.[4]  The front of the Heater had a data plate label (the "Data Plate Label"), which describes the specifications of the Heater and notes in one box:

**LIMITED WARRANTY**
INNER TANK 6 YEAR
PARTS       6 YEAR[5]

"Plaintiffs did not receive any other documentation regarding [the limited warranty], or the owner's manual, before purchasing their

---

[2]See Defendants' Answer to First Amended Complaint ("Answer"), Docket Entry No. 17, p. 1 ¶ 1.

[3]Plaintiffs assert that A.O. Smith "owns and operates" American Water Heater, but Defendants deny that A.O. Smith operates American Water Heater.  Compare Amended Complaint, Docket Entry No. 14, p. 5 ¶ 12, with Answer, Docket Entry No. 17, p. 3 ¶ 12.

[4]See Amended Complaint, Docket Entry No. 14, p. 3 ¶ 7.

[5]See Data Plate Label, Exhibit B to Motion to Dismiss, Docket Entry No. 16-2, p. 2.

water heater."[6]  Plaintiffs had the heater professionally installed in their attic.[7]

On September 9, 2014, Plaintiffs noticed a water leak originating from their attic.[8]  Rosa investigated and found that the Heater's drain valve had failed and the contents of the Heater's tank had leaked into the attic.[9]  Rosa had to puncture his attic tent cover to allow the water to drain before he could enter the attic.[10]  Water continued to flow from the Heater and out of the broken drain valve until Plaintiffs were able to shut off the water supply to their home, which left them without hot water.[11]

Rosa called a plumber to repair the drain valve, which "was found to be extremely brittle and the threads on the valve had failed."[12]  The plumber replaced the drain valve with a brass drain

---

[6]See Amended Complaint, Docket Entry No. 14, pp. 3-4 ¶ 7. Plaintiffs allege that additional terms regarding Defendants' warranty are provided in a Warranty Sheet, which is only given to customers "after they purchase a water heater, if at all." See id. at 8-9 ¶¶ 24-25.  Defendants attached these terms to their Motion to Dismiss, Motion to Strike, and Answer.  See Limited Warranty, Residential Type Water Heater for Installation in a Single Family Dwelling ("Limited Warranty Terms"), Exhibit A to Motion to Dismiss, Docket Entry No. 16-1, p. 2.

[7]See Amended Complaint, Docket Entry No. 14, p. 4 ¶ 7.

[8]See id. at 4 ¶ 8.

[9]See id.

[10]See id.

[11]See id.

[12]See id. at 4 ¶ 10.

valve for $195.00, including costs and labor.[13]  Plaintiffs also replaced the attic tent cover for $250.00, excluding labor.[14]  Rosa called American Water Heater's toll-free number to complain and "seek compensation under Defendants' six (6) year limited warranty."[15]  American Water Heater's customer service representative told Rosa that the company would either provide Plaintiffs with a replacement drain valve or reimburse them approximately $6.95, "Defendants' cost for a plastic replacement drain valve."[16]  "Plaintiffs refused Defendants' offer, noting that it did not effectively remedy the defect and a plastic drain valve would lead to future leaks."[17]

Plaintiffs filed their complaint on July 2, 2015.[18]  Defendants filed a motion to dismiss, a motion to strike Plaintiffs' class claims, and an answer on September 14, 2015.[19]  Plaintiffs amended

---

[13]See id.

[14]See id.

[15]See id. at 4 ¶ 11.  The telephone number does not appear on the Data Plate Label, but it is listed on the Limited Warranty Terms.

[16]See id. at 4-5 ¶ 11.

[17]See id. at 5 ¶ 11.

[18]See Class Action Complaint, Docket Entry No. 1.

[19]See Defendants' Motion to Dismiss and Brief in Support, Docket Entry No. 9; Defendants' Motion to Strike and Brief in Support, Docket Entry No. 10; Defendants' Answer to Complaint, Docket Entry No. 11.

-4-

their complaint on October 2, 2015.[20]  Plaintiffs contend that
Defendants use "plastic" drain valves that are inappropriate for
water heaters because such parts are exposed to high and
fluctuating temperatures that can cause plastic to become brittle
and break.[21]  Plaintiffs allege that Defendants' "practice of
installing materially defective drain valves on their water
heaters, and failing to provide an adequate remedy for this defect,
breaches Defendants' express and implied warranty and violates the
[MMWA]."[22]  Plaintiffs seek damages and/or injunctive relief on
behalf of themselves and all similarly situated purchasers[23] in a
National Class of

> All entities and natural persons who, from July 2, 2011
> to present, purchased an American Water Heater Company
> branded residential gas water heater in the United States
> that was equipped with a plastic drain valve.[24]

Plaintiffs also define the following Texas Subclass of

> All entities and natural persons who, from July 2, 2011
> to present, purchased an American Water Heater Company
> branded residential gas water heater in the State of
> Texas that was equipped with a plastic drain valve.[25]

---

[20]See Amended Complaint, Docket Entry No. 14.

[21]See id. at 1-3.  Defendants respond that the drain valve was
made of "heat-resistant glass-filled nylon polymer," which is
proper material for such parts.  See Answer, Docket Entry No. 17,
p. 1 ¶ 2.

[22]Id. at 2-3 ¶ 4.

[23]See Amended Complaint, Docket Entry No. 14, pp. 2-3 ¶ 4.

[24]Id. at 9 ¶ 27.

[25]Id. at 10 ¶ 27.  Defendants then filed the instant Motion to
Strike, Motion to Dismiss, and Answer.  See Motion to Strike,
(continued...)

## II.   Defendants' Motion to Dismiss

Defendants move to dismiss Plaintiffs' Amended Complaint under Federal Rules of Civil Procedure 12(b)(1), arguing that Plaintiffs lack standing to seek injunctive relief and that their claim for injunctive relief is moot, and 12(b)(6), arguing (1) the limited warranty is the express warranty between the parties, and there is no basis for the declaratory relief sought; (2) Plaintiffs cannot recover consequential damages; and (3) Plaintiffs have failed to state a claim for injunctive relief.[26]

### A.   Standing to Seek Injunctive Relief

#### 1.   Standard of Review - Fed. R. Civ. P. 12(b)(1)

Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'" Halmekangas v. State Farm Fire and Casualty Co., 603 F.3d 290, 292 (5th Cir. 2010). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." In re FEMA Trailer Formaldehyde Products Liability Litigation, 668 F.3d 281, 286 (5th Cir. 2012) (quoting Home Builders Association, Inc. v. City of Madison, 143 F.3d 1006,

---

[25](...continued)
Docket Entry No. 15; Motion to Dismiss, Docket Entry No. 16; Answer, Docket Entry No. 17.

[26]See Motion to Dismiss, Docket Entry No. 16, pp. 14, 16, 20, 22, 26.

1010 (5th Cir. 1998)).  "[S]tanding and ripeness are essential
components of federal subject-matter jurisdiction." In re Jillian
Morrison, L.L.C., 482 F. App'x 872, 875 (5th Cir. 2012).

When facing a challenge to subject matter jurisdiction and
other challenges on the merits, courts must consider the
Rule 12(b)(1) jurisdictional challenge before addressing the merits
of the claim. Alabama-Coushatta Tribe of Texas v. United States,
757 F.3d 484, 487 (5th Cir. 2014).  "[T]he party asserting federal
subject-matter jurisdiction[] has the burden of proving that this
requirement has been met. Id.  "Subject matter jurisdiction is not
defeated by the possibility that the complaint ultimately fails to
state a claim." Energytec, Inc. v. Proctor, 516 F. Supp. 2d 660,
671 (N.D. Tex. 2007) (citations omitted).

When evaluating jurisdiction, courts distinguish between
"facial" and "factual" attacks under Rule 12(b)(1). See Paterson
v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981).  "[I]f the
defense merely files a Rule 12(b)(1) motion, the trial court is
required merely to look to the sufficiency of the allegations in
the complaint because they are presumed to be true.  If those
jurisdictional allegations are sufficient the complaint stands.  If
a defendant makes a 'factual attack' upon the court's subject
matter jurisdiction . . . the defendant submits affidavits,
testimony, or other evidentiary materials." Id.  Because
Defendants' motion relies on the Limited Warranty Terms and Data
Plate Label, both of which are referred to in the Amended

-7-

Complaint, the motion is a facial attack, and "[t]his Court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Williams v. Certain Underwriters at Lloyd's of London, 398 F. App'x 44, 46 (5th Cir. 2010) (quotations omitted).

Standing requires that: (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest . . .;" (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992) (citations and quotations omitted). "For injunctions, an additional inquiry is required, namely that Plaintiffs show that they are likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury." James v. City of Dallas, Texas, 254 F.3d 551, 563 (5th Cir. 2001). Standing is not dispensed in gross, so the court must evaluate the Plaintiffs' Article III standing for each claim. Fontenot v. McCraw, 777 F.3d 741, 746 (5th Cir. 2015). Lack of standing may be found based on the complaint alone. Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996).

2.  <u>Analysis</u>

Plaintiffs seek "[a]n order enjoining Defendants from further distribution and sale of the defective water heaters, and to replace the plastic drain valve with a suitable alternative."[27] Defendants argue that Plaintiffs lack standing to seek injunctive relief because their alleged injury was suffered in the past and cannot be redressed by injunctive relief.[28] Plaintiffs respond that "courts have allowed a plaintiff that suffered a past injury to bring claims on behalf of absent putative class members that suffer risk of the same future injury."[29]

Standing and class certification  must both be addressed on a claim-by-claim basis.  <u>James</u>, 254 F.3d at 563.   Generally, "[b]efore we reach the questions regarding the class certification, we must resolve the standing question as a threshold matter of jurisdiction."  <u>Cole v. General Motors Corp.</u>, 484 F.3d 717, 721 (5th Cir. 2007) (citing <u>Rivera v. Wyeth-Ayerst Laboratories</u>, 283 F.3d 315, 319 (5th Cir. 2002)).   "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court."  <u>James</u>, 254 F.3d at 562 (quoting <u>Sosna v. Iowa</u>, 95 S. Ct. 553, 559 (1975)).   "If the

---

[27]<u>See</u> Amended Complaint, Docket Entry No. 14, p. 17 ¶ C.

[28]<u>See</u> Motion to Dismiss, Docket Entry No. 16, pp. 22-26.

[29]Opposition to Defendant's Motion to Dismiss First Amended Complaint ("Opposition to Motion to Dismiss"), Docket Entry No. 21, p. 17.

litigant fails to establish standing, he or she may not seek relief on behalf of himself or herself or any other member of the class." Id. at 563 (citing O'Shea v. Littleton, 94 S. Ct. 669, 675 (1974)).

Defendants rely on Brandner v. Abbott Laboratories, Inc., Civ. Action No. 10-3242, 2012 WL 27696 (E.D. La. Jan. 5, 2012), in support of their standing argument.   In Brandner the plaintiff attempted to bring a class action seeking injunctive relief against a manufacturer that recalled beetle-infested infant formula.   Id. at *1.   Plaintiff alleged that she fed her child the formula before the recall, causing the child gastrointestinal problems and herself severe emotional distress.   Id.   The plaintiff proposed a class of those who had purchased the formula, seeking damages and "injunctive relief prohibiting Defendants from selling contaminated [] infant formula in the future, and requiring the Defendants to put in place sufficient precautions such that its [] infant formula is not contaminated in the future."   Id.

The defendant argued that the plaintiff lacked standing to seek injunctive relief.   Id. at *2.   The plaintiff responded that she could become pregnant again, and if she did, she "would benefit from the injunctive relief sought concerning Abbott's sales and business practices involving its manufacture and sale of [the] formula."   Id.   The district court granted the defendant's motion for judgment on the pleadings because the plaintiff failed to make that assertion in her complaint, injunctive relief could not redress her past injury, and her theory was too speculative.   Id.

-10-

at *2-3.  The court also found it implausible that the plaintiff
would purchase the same formula even if she did become pregnant
again.  Id. at *3.  See also Smith v. Chrysler Financial Co., Civ.
Action No. 00-CV-6003 DMC, 2004 WL 3201002, at *4 (D.N.J. Dec. 30,
2004) ("The injury which Plaintiffs allege, that they may want to
buy another Chrysler in the future and may be discriminated against
by Defendant, is simply too speculative, especially in light of the
fact that Defendant may not ever be involved in the financing of
Plaintiffs' hypothetical future Chrysler purchases."); MET-Rx USA,
Inc. v. Shipman, 62 S.W.3d 807, 810-11 (Tex. App.—Waco 2001, pet.
denied) ("The[] same standing requirements apply to a class action.
Thus, a class plaintiff must first establish individual standing
before a court reaches the question of whether that plaintiff is a
proper representative of the class . . . .  Shipman's disavowal of
any intent to use MET-Rx in the future is determinative of his
standing to pursue this class action.  The future injunctive relief
he seeks will not redress the injuries he allegedly suffered from
using MET-Rx in the past.  Thus, he lacks standing to seek
injunctive relief.") (citations omitted).

As in Brandner, the injunctive relief sought here will not
benefit Plaintiffs, who have already replaced the valve, and do not
allege that they would purchase a heater with the same valve again
in the future.  Plaintiffs argue, however, that "when the class is
divided between those that have been injured, and those that have
not, the Supreme Court's decisions in Ortiz v. Fibreboard Corp.,

-11-

527 U.S. 815 (1999), and <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591 (1997) hold that Article III standing can be decided after the Court conducts it[s] Rule 23 analysis in a class action."[30] Plaintiffs argue that some courts have therefore allowed a plaintiff that suffered a past injury to bring claims on behalf of class members who are at risk of the same future injury.[31]

The Fifth Circuit has addressed a similar argument based on <u>Amchem</u> and <u>Ortiz</u>, and held that "[w]hen questions of both Article III jurisdiction and class certification are presented, the class certification questions, at times, should be treated first because class certification issues are 'logically antecedent to Article III concerns and pertain to statutory standing, which may properly be treated before Article III standing.'  Because the class certification issue presented here is not outcome determinative, as it was in both <u>Ortiz</u> and <u>Amchem</u>, it need not, in our minds, be treated first."[32]  <u>Pederson v. Louisiana State University</u>, 213 F.3d 858, 866

---

[30]Opposition to Motion to Dismiss, Docket Entry No. 21, p. 16.

[31]<u>Id.</u> at 16-17.

[32]<u>Amchem</u> and <u>Ortiz</u> were asbestos cases, neither of which involved injunctive relief.  <u>See Ortiz</u>, 119 S. Ct. at 2307.  The <u>Ortiz</u> court recognized in that context:  "the class certification issues are, as they were in <u>Amchem</u>, 'logically antecedent' to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing.  Thus the issue about Rule 23 certification should be treated first, 'mindful that [the Rule's] requirements must be interpreted in keeping with Article III constraints . . . .'"  <u>Id.</u> (citations omitted).  The Court's concern was with constitutional implications of a mandatory class and global settlements of mass torts with a
(continued...)

n.5 (5th Cir. 2000) (citations omitted).    The same reasoning
applies in this action.    Plaintiffs have not demonstrated that the
class-certification issues are outcome-determinative or need to be
addressed before Article III standing.

The cases Plaintiffs cite do not rely on <u>Amchem</u> or <u>Ortiz</u>.    For
example, in <u>Shahinian v. Kimberly-Clark Corp.</u>, Case No. CV 14-8390
DMG (SHx), 2015 WL 4264638, at *1 (C.D. Cal. July 10, 2015), the
plaintiff challenged Kimberly-Clark's marketing of high performance
surgical gowns as "providing the highest level of liquid barrier
protection."    The plaintiff found the gowns did not provide the
promised protection and claimed he would not have purchased or used
them had he known the "truth."    <u>Id.</u> at *2.    Kimberly-Clark argued
that the plaintiff failed to allege likelihood of future injury to
support injunctive relief because he asserted that he stopped
purchasing the gowns and did not allege that he would do so again.
<u>Id.</u> at *4.    The court held that the plaintiff "need not allege that
he will willingly subject himself to future injury, or that he will
be fooled by false advertising he now knows to be false, in order
to seek injunctive relief on behalf of a class."    <u>Id.</u> (citing
<u>Henderson v. Gruma Corp.</u>, No. CV 10-04173 AHM (AJWx), 2011
WL 1362188 (C.D. Cal. Apr. 11, 2011)).    The court also found that
"there is a likelihood of repeat injury for the class as a whole

---

[31](...continued)
limited fund, especially given the unique situation surrounding
decades of ongoing asbestos litigation.    <u>See</u> <u>id.</u> at 2107-23; <u>see
also</u> <u>Amchem</u>, 117 S. Ct. at 2239-40.

since some class members do not have the same knowledge as Shahinian now does, and on the basis of 'class standing,' the claims may proceed."[32]  Id.

The Shahinian court relied on NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145 (2d Cir. 2012), cert. denied, 133 S. Ct. 1624 (2013).  In NECA-IBEW the Second Circuit considered "a plaintiff's standing to assert claims on behalf of purchasers of securities issued under the same allegedly false and misleading SEC Form S-3 and base prospectus . . . , but sold in separate offerings by unique prospectus supplements and free writing prospectuses."  Id. at 148.  The NECA-IBEW court held that:

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he "personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant," and (2) that such conduct implicates "the same set of concerns" as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

NECA-IBEW, 693 F.3d at 162 (citations omitted).  Emphasizing the difficulty of the analysis, the court concluded that the plaintiffs had standing.  Id. at 164 (even so, the "district court, after reviewing all of the Rule 23 factors, retains broad discretion to make that determination.").[33]  NECA-IBEW, however, involved false

---

[32]See also Gratz v. Bollinger, 123 S. Ct. 2411, 2423, 2423 n.15 (2003) (recognizing a "tension" between inquiries into adequacy of representation and Article III standing).

[33]Plaintiffs also cite Sosna, 95 S. Ct. at 557, where the Supreme Court rejected a mootness argument that "[b]y the time her case reached this Court, however, appellant had long since satisfied (continued...)

-14-

advertising and the plaintiffs sought monetary damages for securities fraud, not injunctive relief.

After carefully considering the parties arguments the court concludes that Plaintiffs cannot establish Article III standing for injunctive relief because such relief would not redress their injury and they have not demonstrated a likelihood that they face a threat of future injury.  In a class action the general rule remains that standing should be addressed before other matters because it goes to the court's power to hear a claim, and Plaintiffs have not demonstrated that a different rule should apply in this case.  See Cole, 484 F.3d at 721 ("Before we reach the questions regarding the class certification, we must resolve the standing question as a threshold matter of jurisdiction."); Grant ex rel. Family Eldercare v. Gilbert, 324 F.3d 383, 388-90 (5th Cir. 2003) ("It goes without saying that before seeking certification, representative plaintiffs still must establish standing."); James, 254 F.3d at 562-63.[34]

---

[33](...continued)
the Iowa durational residency requirement, [which] no longer stood as a barrier to her attempts to [divorce in Iowa]."  The Court held that "[w]hen the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant.  We are of the view that this factor significantly affects the mootness determination."  Id.  Sosna provides little support for Plaintiffs' argument because in that case the named plaintiff had a justiciable claim for injunctive relief when she filed suit.  Here, Plaintiffs lacked standing to seek injunctive relief at the institution of this action.

[34]Defendants' alternative argument is that Plaintiffs' claim for injunctive relief is moot.  See Motion to Dismiss, Docket Entry
(continued...)

**B.   Failure to State a Claim**

   1.   Standard of Review - Fed. R. Civ. P. 12(b)(6)

   Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id.

   To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that

---

[34](...continued)
No. 16, pp. 22, 26. Plaintiffs argue that their warranty claims are not moot because the "failure of Defendants' plastic drain valves is 'capable of repetition, yet evading review.'" See Opposition to Motion to Dismiss, Docket Entry No. 21, p. 17 n.4. "This exception to the mootness doctrine typically applies to transitory claims in which the mere passage of time threatens to insulate an alleged violation from judicial review. [e.g.] (temporary nature of pretrial detention); (temporary nature of pregnancy)." Dallas Gay Alliance, Inc. v. Dallas County Hospital District, 719 F. Supp. 1380, 1385-86 (N.D. Tex. 1989) (citations omitted). The exception also applies where the named plaintiff no longer has a personal stake in the outcome, but the claim may arise again with respect to that plaintiff. See id. The litigation may continue "because the plaintiff faces some likelihood of becoming involved in the same controversy in the future and therefore, vigorous advocacy can be expected to continue." Id. The court concludes that Plaintiffs' claim for injunctive relief does not fit this narrow exception.

is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 127 S. Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 127 S. Ct. at 1966). When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." <u>Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC</u>, 594 F.3d 383, 387 (5th Cir. 2010). "Federal courts are required to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), claims based on invalid legal theories, even though they may be otherwise well-pleaded." <u>Flynn v. State Farm Fire and Casualty Insurance Co. (Texas)</u>, 605 F. Supp. 2d 811, 820 (W.D. Tex. 2009) (citing <u>Neitzke v. Williams</u>, 109 S. Ct. 1827, 1832 (1989)). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency

should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Sullivan, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Twombly, 550 U.S. at 558) (quotations omitted); see also Exxon Mobil Corp. v. FX Networks, LLC, 39 F. Supp. 3d 868, 870-71 (S.D. Tex. 2014).

   2.   Analysis

      a.   The Limited Warranty Terms Sheet

Plaintiffs argue that Defendants may not rely on documents outside the complaint and thus that the court cannot consider the Limited Warranty Terms that Defendants attached to their Motion to Dismiss.[35] "Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017 (5th Cir. 1996). Courts may also consider matters of which they can take judicial notice. Id. at 1017-18. "When 'matters outside the pleadings' are submitted in support of or in opposition to a Rule 12(b)(6) motion to dismiss, Rule 12(b) grants courts discretion to accept and consider those materials, but does not require them to do so." Ace American Insurance Co. v. Huntsman Corp., 255 F.R.D. 179, 188 (S.D. Tex. 2008) (citations and quotations omitted). If the court chooses to do so, it must treat

---

[35]See Limited Warranty Terms, Exhibit A to Motion to Dismiss, Docket Entry No. 16-1, p. 2. These are also attached to the Answer and Motion to Strike.

the Rule 12(b)(6) motion as a motion for summary judgment under
Rule 56.  Id. (citing Fed. R. Civ. P. 12(d)).

Plaintiffs argue that the court cannot take judicial notice
because the Limited Warranty Terms are "subject to reasonable
dispute," and incorporation is inappropriate because their
authenticity is in question.[37]  Plaintiffs allege that "[t]he front
of the water heater noted that it had a six (6) year limited
warranty on the part[]s and the tank.  Plaintiffs did not receive
any other documentation regarding Defendants' six (6) year limited
warranty, or the owner's manual, before purchasing their water
heater."[38]   In a section entitled "Substantive Allegations,"
Plaintiffs also allege:

> 24. Defendants expressly warrant their residential gas
> water heaters' tanks and component parts from any defects
> for a six (6) year period on the front of each of
> Defendants' water heaters.  Further, additional terms
> regarding Defendants' warranty are provided in a
> "Warranty Sheet", which is only given to customers after
> they purchase a water heater, if at all.  However, the
> terms included on the Warranty Sheet are not known to
> consumers when purchasing their water heater and
> Defendants do not require their customers to agree to
> these additional warranty terms after their purchase.
> Thus, these terms do not form the part of warranty
> between Defendants and their customers.
>
> 25. According to the additional undisclosed terms in the
> Warranty Sheet, Defendants' six (6) year warranty has the
> following limitations:   (1) the warranty only covers
> defects in materials and labor; (2) if any part is found
> defective, Defendants only promise to replace the
> original part with a non-defective part; (3) Defendants

---

[37]Opposition to Motion to Dismiss, Docket Entry No. 21, p. 10.

[38]Amended Complaint, Docket Entry No. 14, pp. 3-4 ¶ 7.

limit their warranty regarding defective parts to a
single replacement part; and (4) Defendants' warranty
does not cover labor or any other damages resulting from
any defect with Defendants' products. Based on these
undisclosed terms, Defendants insist that any defective
plastic drain valve be replaced with another plastic
drain valve. . . . Such remedy provided under Defendants'
undisclosed warranty terms fails in its essential purpose
and breaches the warranty provided by Defendants on the
front of each of their water heaters.[39]

Although the parties dispute the enforceability and effect of

the Limited Warranty Terms, the court may consider this in deciding

a Rule 112(b)(6) motion because they are clearly referenced by and

discussed in the Amended Complaint.  See Collins v. Morgan Stanley

Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000) ("We note

approvingly, however, that various other circuits have specifically

allowed that '[d]ocuments that a defendant attaches to a motion to

dismiss are considered part of the pleadings if they are referred

to in the plaintiff's complaint and are central to her claim.'")

(citation omitted).


b.   Declaratory Relief

In their fourth cause of action Plaintiffs allege:

Defendants have stated that Plaintiffs and Class members
are subject to additional warranty provisions not
provided at the time of contracting, and not agreed to by
the Plaintiffs and Class members after contracting.

Accordingly, Plaintiffs, on behalf of the Class, pray for
a declaration regarding the binding terms to which the
parties are held under Defendants' limited warranty.[40]

---

[39]Id. at 8-9 ¶¶ 24-25.

[40]See id. at 16 ¶¶ 66-67.

The parties dispute whether the Limited Warranty Terms — the separate document that Plaintiffs allegedly did not receive before they purchased the Heater — are part of the warranty (or enforceable) and whether replacing the drain valve with the same type of valve caused the warranty to "fail of its essential purpose." Plaintiffs allege that the Data Plate Label's "LIMITED WARRANTY" statement created an express, written warranty.[40] Defendants argue that the words "LIMITED WARRANTY" on the data plate label "are a clear and unambiguous reference to the Limited Warranty itself," which consists of the Limited Warranty Terms.[41] Defendants argue that "[t]he words 'LIMITED WARRANTY' on the Data Plate Label, without more, do not create an express warranty."[42] Defendants argue that if the Limited Warranty Terms are not included, there is no express or written warranty between the parties, and Plaintiffs have failed to plausibly allege a claim.

Moreover, the Amended Complaint and Plaintiffs' oppositions take confusing and somewhat contradictory approaches to the Limited Warranty Terms.[43] Plaintiffs quote from the Limited Warranty Terms

---

[40]See id. at 3-4 ¶ 7; p. 12 ¶ 37.

[41]See Motion to Dismiss, Docket Entry No. 16, pp. 7-10, 17.

[42]See id.

[43]For example, Plaintiffs affirmatively plead that "the terms included on the Warranty Sheet are not known to consumers when purchasing their water heater and Defendants do not require their customers to agree to these additional warranty terms after their
(continued...)

sheet in support of some of their arguments, but also insist that it is not part of the transaction.[45]

Defendants argue that the timing of Plaintiffs' receipt of the Limited Warranty Terms is immaterial because the warranty was already part of the basis of the bargain.[46] Plaintiffs dispute Defendants' interpretation of the terms and scope of the limited warranty and argue that the warranty fails of its essential

---

[44](...continued) purchase. Thus, these terms do not form the part of warranty between Defendants and their customers." See Amended Complaint, Docket Entry No. 14, pp. 8-9. However, the Amended Complaint also asserts that "[t]hroughout the Class Period, Defendants have expressly warranted that their residential gas water heaters are free of defects in material and workmanship." Id. at 12 ¶ 36. Plaintiffs do not identify where this express language comes from.

[45]See id. at 3-4 ¶ 7 ("The front of the water heater noted that it had a six (6) year limited warranty on the parties [sic] and the tank. Plaintiffs did not receive any other documentation regarding Defendants' six (6) year limited warranty, or the owner's manual, before purchasing their water heater."); id. at 12-13 ¶¶ 38, 41 ("Defendants breached this express warranty by installing plastic drain valves on their residential gas water heaters . . . . Defendants' sole remedy under their express warranty, replacing the defective plastic drain valves with the same defective plastic drain valve, is not an effective remedy and fails of its essential purpose."). See also Opposition to Motion to Dismiss, Docket Entry No. 21, p. 11 ("[T]he parties disagree regarding the terms and scope of warranty coverage for the defective drain valve. As Defendants' motion to dismiss makes clear, it interprets its warranty obligations as satisfied by a single replacement of the allegedly defective drain valve. Conversely, the entire gravamen of Plaintiff's complaint is that the plastic (nylon polymer is a plastic) drain valve is defective for its essential purpose and that replacement with an identical defective plastic valve is not an appropriate cure. [Amended Complaint, Docket Entry No. 14, pp. 14-15, 20-21; see Limited Warranty Terms, Exhibit A to Motion to Dismiss, Docket Entry No. 16-1, § C.2] (promising that 'any component part other than inner tank' is free from defects 'in **material** or workmanship').").

[46]See Motion to Dismiss, Docket Entry No. 16, pp. 17-20.

purpose, entitling them to a declaration that the Limited Warranty Terms' limitations are void and unenforceable.[46]  Although somewhat conflicting, the Amended Complaint alleges sufficient facts to raise plausible claims for relief, which is all that is required at this stage in the litigation.  See Twombly, 127 S. Ct. at 1965. Because there is an actual controversy regarding the limited warranty, the court concludes that Plaintiffs have properly pleaded a claim for declaratory relief.  See Maryland Casualty Co. v. Pacific Coal & Oil Co., 61 S. Ct. 510, 512 (1941) ("[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (citing Aetna Life Insurance Co. v. Haworth, 57 S. Ct. 461, 463-64 (1937)); Sherwin-Williams Co. v. Holmes County, 343 F.3d 383, 387 (5th Cir. 2003).[47]

      c.    Consequential Damages

Plaintiffs' Amended Complaint seeks an award "to Plaintiffs and the Class of compensatory, consequential, or any other damages,

---

[46]See Opposition to Motion to Dismiss, Docket Entry No. 21, p. 12.

[47]Plaintiffs also make various arguments regarding the UCC and when additional terms in an acceptance or confirmation become part of a contract and where the MMWA requires a disclaimer of damages to appear to be effective.  See Opposition to Motion to Dismiss, Docket Entry No. 21, pp. 14-15.  Since the court's ruling does not rest on the location of the disclaimers, it is not necessary to address these arguments.

including interest, in an amount to be proven at trial."[48]
Defendants argue that Plaintiffs' consequential damages claim
should be dismissed under Texas law because the Limited Warranty
Terms exclude consequential damages.[49]   Section 2.719 of the Texas
Business and Commerce Code authorizes a manufacturer to limit or
exclude consequential damages in a written warranty, as long as the
limitation or exclusion is not unconscionable.[50]   The Limited
Warranty Terms state:

> MANUFACTURER SHALL NOT BE LIABLE FOR ANY INCIDENTAL,
> CONSEQUENTIAL, SPECIAL OR CONTINGENT DAMAGES OR EXPENSES,
> ARISING, DIRECTLY OR INDIRECTLY, FROM ANY DEFECT IN THE
> WATER HEATER OR THE USE OF THE WATER HEATER.[51]

Plaintiffs argue that Texas law requires a seller to disclose
the terms of a written warranty to the consumer before the sale.[52]
Most of Plaintiffs' authority refers to disclaiming implied
warranties, not to damages limitations.   See, e.g., Oldham v.
Thompson/Center Arms Co., Inc., Civ. Action No. H-12-2432, 2013
WL 4042010, at *10 (S.D. Tex. Aug. 8, 2013) ("[U]nder Texas law, in

---

[48]See Amended Complaint, Docket Entry No. 14, p. 17 ¶ D.

[49]See Motion to Dismiss, Docket Entry No. 16, p. 21.

[50]A consequential damages limitation may be enforceable even
if the warranty fails of its essential purpose.   See Bray
International, Inc. v. Computer Associates International, Inc.,
Civ. Action No. H-02-98, 2005 WL 6792280, at *9-10, *15 (S.D. Tex.
Sept. 30, 2005), rev'd in part on other grounds, Civ. Action
No. H-02-0098, 2005 WL 3371875 (S.D. Tex. Dec. 12, 2005).

[51]Limited Warranty Terms, Exhibit A to Motion to Dismiss,
Docket Entry No. 16-1, p. 2 ¶ D(2).

[52]See Opposition to Motion to Dismiss, Docket Entry No. 21,
pp. 15-16.

order for a disclaimer of an implied warranty to be valid, it must be communicated, in the manner described in section 2.316(b), to the buyer before the contract of sale has been completed. If a disclaimer [of implied warranty] is not disclosed to the buyer before the contract of sale has been completed, unless the buyer later agrees to the disclaimer as a modification of the contract, it is not effective." (citations and quotations omitted)); Van Den Broeke v. Bellanca Aircraft Corp., 576 F.2d 582, 584 (5th Cir. 1978) ("[T]he time for determining the terms of the contract is when the bargain is struck. Disclaimers of warranty are no different. Therefore, unless the disclaimers are disclosed prior to the agreement and agreed upon, thereby made part of the contract, they are not binding."); Klo-Zik Co. v. General Motors Corp., 677 F. Supp. 499, 508 (E.D. Tex. 1987).

"Although similar in effect, warranty disclaimers and damages limitations are legally distinct." See Berge Helene Ltd. v. GE Oil & Gas, Inc., 830 F. Supp. 2d 235, 267 (S.D. Tex. 2011), superseded in part on other grounds, 896 F. Supp. 2d 582 (citing Tex. Bus. & Com. Code §§ 2.316, 2.719). Texas law allows warrantors to disclaim consequential damages. Warranties may be binding on the parties even if the buyer does not receive the details before the transaction is completed. Comment 7 to § 2-313 of the Uniform Commercial Code (adopted identically as Comment 7 to Texas Business & Commerce Code § 2-313) states:

-25-

The precise time when words of description or affirmation
are made or samples are shown is not material.  The sole
question is whether the language or samples or models are
fairly to be regarded as part of the contract.    If
language is used after the closing of the deal (as when
the buyer when taking delivery asks and receives an
additional       assurance),      the      warranty     becomes      a
modification, and need not be supported by consideration
if    it    is    otherwise    reasonable    and    in    order
(Section 2-209).[54]

In considering the Defendants' Rule 12(b)(6) motion the court

is required to accept Plaintiffs' factual allegations as true and

determine   whether   they   raise   a   plausible   claim   for   relief.

Plaintiffs  allege  that  "Plaintiffs  did  not  receive  any  other

documentation regarding Defendants' six (6) year limited warranty,

---

[54]Courts  in  other  jurisdictions  have  held  "[t]he  clear
implication of Official Comment 7 is that express warranties may be
formed prior to the completion of the sale or even after the sale
has been consummated.    What is paramount is the relationship
between the sale of the goods and the affirmations made by the
seller."   Rite Aid Corp. v. Levy-Gray, 894 A.2d 563, 573 (Md. 2006)
("Rite Aid argues that for an affirmation to become 'part of the
basis of the bargain,' the affirmation must be a negotiated term of
the agreement, or the consumer must at least have been aware of its
existence prior to the consummation of the deal.   Based on the
circumstances  surrounding  most  purchases  in  modern  commercial
dealing, we disagree."); see also Murphy v. Mallard Coach Co., 582
N.Y.S.2d 528, 531 (N.Y. App. Div. 1992) ("Likewise, we believe that
while the warranty was technically handed over after plaintiffs
paid the purchase price, the fact that it was given to plaintiffs
at the time they took delivery of the motor home renders it
sufficiently proximate in time so as to fairly be said to be part
of the basis of the bargain.").   Defendants analogize a case out of
this court, Enpro Systems, Ltd. v. Namasco Corp., 382 F. Supp. 2d
874, 887-89 (S.D. Tex. 2005).   "In Enpro, this Court found that the
later-provided warranty was sufficiently connected with the sale
transaction  so  as  to  be  part  of  the  basis  of  the  bargain."
Defendants' Reply Brief in Support of Motion to Dismiss First
Amended Complaint, Docket Entry No. 29, p. 5.

or the owner's manual, before purchasing their water heater."[55]  In their Opposition to Motion to Dismiss Plaintiffs argue that they never received a copy of the Limited Warranty Terms.[56]  Although Plaintiffs' allegations and arguments are inconsistent and confusing, accepting as true the fact that Plaintiffs never received a copy of the Limited Warranty Terms, the consequential damages claim is not subject to dismissal under Rule 12(b)(6).  See Twombly, 127 S. Ct. at 1974.  Therefore, Plaintiffs' claims for consequential damages and declaratory relief will not be dismissed, but Plaintiffs' request for injunctive relief will be dismissed.

### III.  Defendants' Motion to Strike

Defendants argue that:  (1) the class claim for breach of warranty under the MMWA should be stricken for Plaintiffs' failure to comply with the MMWA's pre-litigation class notice requirement; (2) the Amended Complaint demonstrates that Plaintiffs cannot maintain national class claims for breach of warranty under the MMWA; and (3) the Texas class allegations should be stricken to the extent they purport to assert claims on behalf of absent putative class members for unmanifested defects.[57]

---

[55]See Amended Complaint, Docket Entry No. 14, p. 4.  See also id. at 8 ¶ 24 ("[A]dditional terms regarding Defendants' warranty are provided in a 'Warranty Sheet', which is only given to customers after they purchase a water heater, if at all.").

[56]See Opposition to Motion to Dismiss, Docket Entry No. 21, p. 13.

[57]See Motion to Strike, Docket Entry No. 15, pp. 10, 13, 18.

**A.    Standard of Review**

Class certification is governed by Federal Rule of Civil Procedure 23.   Under Rule 23(a) the party seeking certification must demonstrate, first, that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

"[T]he proposed class must [also] satisfy at least one of the three requirements listed in Rule 23(b)."   Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011).

The party seeking class certification must affirmatively demonstrate compliance with Rule 23 and "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Id. at 2551.   Certification is proper only if "'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"   Id. "[F]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." Id.

Although Defendants fail to cite the rule of civil procedure on which their Motion to Strike is based, the court concludes the appropriate standard is that of Rule 12(b)(6), and the court will treat Defendants' Motion to Strike as a motion to dismiss.   A

Rule 12(b)(6) motion is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim."[57] See Ramming, 281 F.3d at 161. "The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23. Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." John v. National Security Fire and Casualty Co., 501 F.3d 443, 445, 445 n.4 (5th Cir. 2007). The court must "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." General Telephone Co. of the Southwest v. Falcon, 102 S. Ct. 2364, 2372 (1982). "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." Id. (internal citations and quotations omitted); Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996) ("A district court certainly may look past the pleadings to determine whether the requirements of rule 23 have been met."); see also Myart v. Glosson, Civ. Action No. SA-14-CV-831-XR, 2014 WL 6612008, at *5 (W.D. Tex. Nov. 20, 2014) ("Courts have cited Falcon and John to strike or dismiss [under Rule 12(f) or Rule 12(b)(6)] class-action

---

[57]See standard of review discussion at Section II.B(1), supra.

allegations from a complaint when the pleadings clearly fail to allege facts to support the minimum requirements of Rule 23." (citations omitted)).

**B.  Analysis**

   1.   The MMWA's Class Notice Requirement

   The MMWA provides:

   No action (<u>other than a class action</u> or an action respecting a warranty to which subsection (a)(3) of this section applies) may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty or service contract, and a <u>class</u> of consumers may not proceed in a class action under such subsection with respect to such a failure <u>except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs</u>, unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply.  In the case of such a <u>class action</u> (other than a class action respecting a warranty to which subsection (a)(3) of this section applies) brought under subsection (d) of this section for breach of any written or implied warranty or service contract, <u>such reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class</u>.  In the case of such a class action which is brought in a district court of the United States, the representative capacity of the named plaintiffs shall be established in the application of rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 2310(e) (emphasis added).  Defendants argue that this section required Plaintiffs to give Defendants "pre-litigation class notice."[58]  Plaintiffs did not provide pre-suit notice that Plaintiffs were acting on behalf of a class.[59]

---

   [58]<u>See</u> Motion to Strike, Docket Entry No. 15, pp. 10-12.

   [59]<u>See</u> Amended Complaint, Docket Entry No. 14, p. 16 ¶ 63 ("Should this action be certificated as a class action, Plaintiffs will provide Defendants with notice of their class claims.").

There is a split of authority on this issue.  In <u>Bearden v. Honeywell International Inc.</u>, 720 F. Supp. 2d 932 (M.D. Tenn. 2010), the plaintiffs brought an MMWA claim on behalf of a class of "'all customers in the United States who have purchased [allegedly defective air cleaners].'"  <u>Id.</u> at 935.  The court held that the plaintiffs could not maintain their MMWA claim on behalf of the class because they did not give the manufacturer notice that they were acting on behalf of a class prior to filing suit.  <u>Id.</u> at 937; <u>see</u> <u>also</u> <u>Stearns v. Select Comfort Retail Corp.</u>, No. 08-2746 JF (PVT), 2009 WL 4723366, at *10 (N.D. Cal. Dec. 4, 2009) (dismissing a class MMWA claim because "Plaintiffs once again have failed to allege that they provided adequate notice to [the defendant] that they were acting on behalf of the class prior to filing suit.").

Other courts have read § 2310(e) differently.  The federal district court for the Southern District of Ohio concluded that the <u>Bearden</u> and <u>Stearns</u> courts erred.  <u>See</u> <u>In re Porsche Cars North America, Inc.</u>, 880 F. Supp. 2d 801, 824-25 (N.D. Ohio 2012).  The court reasoned that:

> The plain language of the statute imposes different requirements on individual plaintiffs and class action plaintiffs regarding the time at which they must satisfy the opportunity to cure requirement.  For individual plaintiffs, Section 2310(e) is a condition precedent to filing suit unless the warrantor establishes an informal dispute settlement procedure pursuant to Section 2310(a)(3).  In contrast, plaintiffs bringing a class action may file suit before the defendant is afforded an opportunity to cure for the limited purpose of establishing the representative capacity of the named plaintiffs.  Once a court makes this determination, but before the class action can proceed, the defendant must

> be afforded an opportunity to cure the alleged breach of warranty and the named plaintiffs must at that point inform the defendant that they are acting on behalf of a class.

Id. at 824.   The court discussed the statutory language:   "To hold that no class action 'may be brought . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure'" reads "other than a class action" out of the statute.   Id. at 825.   Such a reading nullifies the phrase that "'a class of consumers may not *proceed* in a class action . . . except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs.'"

Id.   The court concluded:

> The only way to reconcile the latter clause with the rest of the statute is to read Section 2310(e) as standing for the proposition that a class action may be brought, but may not proceed once the court determines the representative capacity of the named plaintiffs, until the defendant is provided with an opportunity to cure the alleged defect.   If a class action may not be brought unless a defendant first is afforded an opportunity to cure the alleged breach, then the phrase "a class of consumer may not proceed in a class action" would not make sense.   There would be nothing to proceed with because no case would have been brought.
>
> The courts that interpreted Section 2310(e) to dismiss a plaintiff's class action claim at the pleadings stage failed to account for this language in the statute.

See id. (citations omitted).

Based on the language of the statute the court is persuaded by this reasoning, and Plaintiffs' MMWA claim will not be dismissed for failure to provide Defendants pre-suit notice that Plaintiffs were acting on behalf of a class.   See Galitski v. Samsung

Telecommunications America, LLC, Civ. Action No. 3:12-CV-4782-D, 2013 WL 6330645, at *12 (N.D. Tex. Dec. 5, 2013) ("[P]laintiffs are bringing their MMWA claim on behalf of a class of California consumers. Accordingly, they are not required at this juncture to plead that they have given Samsung an opportunity to cure the defect. If this court certifies a class, the plaintiffs must give Samsung notice and an opportunity to cure under the MMWA."); In re Shop-Vac Marketing and Sales Practices Litigation, 964 F. Supp. 2d 355 (M.D. Pa. Aug. 9, 2013) ("While Section 2310(e) requires that sellers be afforded an opportunity to cure before an individual consumer may **bring** an action under the MMWA, classes of consumers are prohibited only from **proceeding** in a class action unless the seller is afforded a reasonable opportunity to cure the defect. Thus, a named plaintiff in a class action may bring an action prior to affording the defendant an opportunity to cure, for the purpose of establishing his or her representative capacity."); see also Porter v. Chrysler Group LLC, No. 6:13-cv-555-Orl-37GJK, 2013 WL 3884141 (M.D. Fla. July 26, 2013); In re Sears, Roebuck & Co. Tools Marketing and Sales Practices Litigation, No. MDL-1703, Nos. 05-C-4742, 05-C-4744, 2012 WL 1015806, at *5 (N.D. Ill. March 22, 2012).

## 2.   Plaintiffs' National Class Claims Under the MMWA

The Amended Complaint defines a "National Class" as:   "All entities and natural persons who, from July 2, 2011 to present,

purchased an American Water Heater Company branded residential gas water heater in the United States that was equipped with a plastic drain valve."[61]   Defendants argue that the MMWA claim on behalf of this proposed National Class should be stricken because Plaintiffs cannot satisfy Federal Rule of Civil Procedure 23(b)(3), which requires that the court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members" before certifying a class.[62]   Defendants argue that the MMWA "relies upon state law to create and define causes of action for breach of warranty," requiring application of the substantive warranty laws of potentially every state and defeating predominance.[63]

The Fifth Circuit recognizes that "in a class action governed by the laws of multiple states . . . variations in state law may

---

[61]See Amended Complaint, Docket Entry No. 14, p. 9 ¶ 27.

[62]See Motion to Strike, Docket Entry No. 15, pp. 13-18. Plaintiffs do not dispute that this is the applicable subsection of Fed. R. Civ. P. 23(b).

[63]See id. at 15.   Defendants argue that this court, as a federal court sitting in diversity, must apply Texas's choice of law rule.   See id. at 15-16 (citing Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 61 S. Ct. 1020, 1021-22 (1941)).   Under Texas law, in the absence of a choice of law clause, the Texas Supreme Court applies the "most-significant relationship test" from the Restatement (Second) of Conflict of Laws § 188 to determine whether, in a breach of warranty action, the transaction bears an appropriate relationship to Texas such that the Texas UCC would apply.   See id.   A.O. Smith is a Delaware corporation with its principal place of business in Wisconsin, and American Water Heater is a Nevada corporation with its principal place of business in Tennessee.   See Amended Complaint, Docket Entry No. 14, p. 5 ¶¶ 12-13.   Thus it is unlikely, and Plaintiffs do not argue, that Texas law would apply to every transaction.

swamp any common issues and defeat predominance." Cole, 484 F.3d
at 724 (quotations omitted) (citing Castano, 84 F.3d at 741). In
Cole, GM argued that the district court erred in certifying a
nationwide class of owners of vehicles with defective airbags
because of variations in state substantive express and implied
warranty law. Id. at 718, 724-25. The Fifth Circuit agreed:

> We conclude that plaintiffs did not sufficiently
> demonstrate the predominance requirement because they
> failed both to undertake the required "extensive
> analysis" of variations in state law concerning their
> claims and to consider how those variations impact
> predominance. Plaintiffs' assertion of predominance
> relied primarily on the textual similarities of each
> jurisdiction's applicable law and on the general
> availability of legal protection in each jurisdiction for
> express and implied warranties. Plaintiffs' largely
> textual presentation of legal authority oversimplified
> the required analysis and glossed over the glaring
> substantive legal conflicts among the applicable laws of
> each jurisdiction.
>
> As we explain below, there are numerous variations in the
> substantive laws of express and implied warranty among
> the fifty-one jurisdictions that the plaintiffs failed to
> "extensively analyze" for their impact on predominance.[63]

Id. at 725-26 (citations omitted). Other jurisdictions have also
found nationwide class certification inappropriate when the laws of
each state will apply to individual plaintiffs. See, e.g., In re
Bridgestone/Firestone, Inc., 288 F.3d 1012, 1018 (7th Cir. 2002).

_____

[63]"Specifically, the laws of the jurisdictions vary with
regards to (1) whether plaintiffs must demonstrate reliance,
(2) whether plaintiffs must provide notice of breach, (3) whether
there must be privity of contract, (4) whether plaintiffs may
recover for unmanifested vehicle defects, (5) whether
merchantability may be presumed and (6) whether warranty
protections extend to used vehicles." Cole, 484 F.3d at 726.

Plaintiffs respond that the MMWA "creates a federal private cause of action" and thus federal "express warranty" law rather than state law will apply to the MMWA claims.[64]

The MMWA defines both "written" and "implied" warranty:

(6) The term "written warranty" means--

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

(7) The term "implied warranty" means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product.

---

[64]See Opposition to Defendant's Motion to Strike First Amended Complaint ("Opposition to Motion to Strike"), Docket Entry No. 20, pp. 9-17.   Plaintiffs argue they "are not hereby alleging a national class is premised on a violation of Texas state law for breach of an express and implied warranty.   Instead, Plaintiffs only allege a national class (or alternatively a Texas class) based on assertion [sic] that that [sic] Defendants' refusal to comply with their written warranty provided to the Class violates the MMWA."   Id. at 10 (citations omitted).

15 U.S.C. § 2301(6), (7) (emphasis added).  The MMWA provides for
a "Civil action by consumer:"

> Subject to subsections (a)(3) and (e) of this section, a
> consumer who is damaged by the failure of a supplier,
> warrantor, or service contractor to comply with any
> obligation under this chapter, or under a written
> warranty, implied warranty, or service contract, may
> bring suit for damages and other legal and equitable
> relief[.]

Id. § 2310(d)(1).

Addressing an argument similar to Plaintiffs', the D.C.
Circuit vacated a district court's nationwide class certification
due to a flawed predominance analysis.  Walsh v. Ford Motor
Company, 807 F.2d 1000, 1004 (D.D.C. 1986).  The court held that
"except in the specific instances in which [the MMWA] expressly
prescribes a regulating rule, the Act calls for the application of
state written and implied warranty law, not the creation of
additional federal law."  Id. at 1012.  The court discussed the
legislative history and why Congress defined written warranty
differently:

> The [MMWA] . . . sets out a self-contained definition of
> "written warranty"; in contrast to the subsection
> defining "implied warranty" . . . , the written warranty
> definition does not refer to state law. An argument that
> Magnuson-Moss federalizes written warranty law therefore
> has surface plausibility.
>
> One need not search far, however, to comprehend why the
> Act presents its own definition of written warranty.
> State law distinguishes "express" warranties from
> "implied" ones.  "Express warranty" is defined in state
> law; the term encompasses both written and oral
> undertakings.  Congress ultimately decided that oral
> warranties need not be covered in the federal legislation

unless and until they become "more prevalent." Because
the state law term "express warranty" did not suit the
limited federal purpose, Congress supplied a
definition—one confined to "written warranty"—that did.

But Congress indicated that, as in the case of implied
warranties, state law would guide the determination
whether a written warranty had been created. . . . The
Conference Report to S. 356, the bill that became the
Act, explains:

> The conferees intend that, if under State law
> a warrantor or other person is deemed to have
> made a written affirmation of fact, promise,
> or undertaking he would be treated for
> purposes of [the Act's consumer remedies
> section, section 110] as having made such
> affirmation of fact, promise, or undertaking.

Here too, if Congress intended displacement of state law
beyond the Act's explicit prescriptions, one would expect
to find a clear statement to that effect. Particularly
in an area traditionally in the state's domain, such as
sales law, the likelihood is that the national
legislature, when it intervenes, and does not say
otherwise, opts for the little rather than the much. We
have no reason to believe Congress departed from that
general pattern in this particular instance.

Id. at 1015-16. "Having determined that state warranty law lies at

the base of all warranty claims under [MMWA]" the court concluded:

> Magnuson-Moss, appellees urge, federalizes much of the
> law governing consumer product warranties; thus common
> questions of law, they assert, necessarily predominate in
> this case. . . . Congress sought only to supplement
> state warranty law by prescribing certain minimum
> standards for warrantors, and by affording consumers
> additional avenues for redress. . . .

> The action Magnuson-Moss authorizes may be instituted for
> recovery from "a supplier, warrantor, or service
> contractor" who has failed "to comply with any obligation
> under this chapter, or under a written warranty, implied
> warranty, or service contract."

> Had Congress intended Magnuson-Moss to substitute federal
> for state law as the dominant regulator of consumer
> product warranties under the Act, the alternative
> references just quoted would be anomalous.    An
> "obligation under this chapter" derives, of course, from
> the federal Act.    The further, separate reference to
> obligations under written and implied warranties strongly
> suggests that Congress contemplated the coexistence of
> another source of regulating rules in the actions
> authorized by section 110(d), a source outside the
> federal Act, i.e., state law.
>
> Tellingly, the $50,000 amount-in-controversy threshold
> for federal court jurisdiction stated in section
> 110(d)(3) confines the mine-run of Magnuson-Moss consumer
> civil actions to state courts.    A responsible Congress
> would not, without offering rhyme or reason, place the
> laboring oar in developing a corpus of federal consumer
> product warranty law in the hands of over fifty diverse,
> non-federal court systems.

Id. at 1012-13.

The Fifth Circuit has employed similar reasoning in analyzing

MMWA claims.    In Boelens v. Redman Homes, Inc., 748 F.2d 1058,

1060-61 (5th Cir. 1984), the court reviewed a case in which the

plaintiffs alleged that they sustained personal injuries and

incidental economic damages, predicating federal jurisdiction upon

the MMWA and adding pendent state law claims.    The court examined

the history and purpose of the MMWA.

> The [MMWA] was Congress's first comprehensive attempt to
> deal at the federal level with problems of consumer
> warranties.    "The draftsmen believed that warranties on
> consumer products often were too complex to be
> understood, too varied for consumers to make intelligent
> market comparisons, and too restrictive for meaningful
> warranty protection." . . .    "One of the prime concerns
> addressed in the Act was the warranty wherein the large
> print giveth but the small print taketh away."    The Act
> creates minimum disclosure standards for written consumer
> product warranties and defines minimum content standards

> for such warranties.   The Act does not require that a
> seller give a warranty on a consumer product, but if
> [one] is given, it must comply with the terms of the Act.

Id. at 1061 (citations omitted).   The court noted that the
complaint "makes a claim under the MMWA only for breach of
warranty; no claim for breach of the substantive obligations of the
Act is asserted."   Id. at 1063 (emphasis added).   In discussing the
scope of personal injury liability under the MMWA, the court
distinguished the "substantive obligations" of the MMWA and claims
for breach of warranty, which derive from underlying state law.

> If, therefore, a warrantor violated the provisions of
> either § 2308 or § 2304—for example, by disclaiming
> implied warranties or by limiting the duration of implied
> warranty coverage in a warranty purporting to be a "full"
> warranty—the warrantee could sue for the violation and
> recover damages for personal injury because the express
> exceptions to § 2311(b)(2) would remove such a suit from
> the reach of that section. . . .   Such a suit, however,
> would be an action under § 2310(d)(1) for failure "to
> comply with any obligation under this chapter", because
> §§ 2308 and 2304 create substantive obligations.   It
> would not be a suit "under a written warranty [or]
> implied warranty" within the meaning of § 2310(d)(1).
>
>     . . . .
>
> We hold that § 2311(b)(2) of the MMWA prohibits claims
> arising from personal injury based solely on a breach of
> warranty, express or implied.   One may, however, recover
> personal injury damages under the MMWA where there has
> been a violation of the substantive provisions of § 2308
> . . ., § 2304(a)(2) . . . or § 2304(a)(3).

Id. at 1065-68; see also id. at 1069 ("Punitive damages are
recoverable under the MMWA for breach of warranty only if they may
be recovered in a breach of warranty action brought under the
governing state law.").

-40-

Other courts have expressly adopted the reasoning of <u>Walsh</u>.
<u>See</u>, <u>e.g.</u>, <u>Hill v. Hoover Co.</u>, 899 F. Supp. 2d 1259, 1266 (N.D.
Fla. 2012) ("In respect of written warranties, many courts disagree
as to whether the MMWA provides a claimant with an independent
cause of action for written warranties, or whether the MMWA calls
for the application of state law absent an expressly prescribed
regulating rule.   The Court finds the reasoning in <u>Walsh</u>
persuasive, and thus interprets the MMWA as borrowing state law
causes of action for breach of both written and implied warranties
as a necessary condition for bringing forth an action under the
MMWA.") (citations omitted);[65] <u>Galitski</u>, 2015 WL 5319802, at *11
("[The MMWA] calls for the application of state written and implied
warranty law, not the creation of additional federal law, except in
specific instances in which it expressly prescribes a regulating
rule.   Because the court has concluded that common issues do not
predominate with respect to plaintiffs' express or implied warranty
claims under California law, the court also concludes that common
issues do not predominate with respect to plaintiffs' express or
implied warranty claims under the Magnuson–Moss Act.") (quotations
and citations omitted); <u>Bailey v. Monaco Coach Corp.</u>, 350
F. Supp. 2d 1036, 1040 (N.D. Ga. 2004) ("The Act was intended to
supplement, not supplant, state law.   Therefore, unless the Act
expressly prescribes a regulating rule, courts should apply state

---

[65]<u>But see</u> <u>Rentas v. DaimlerChrysler</u>, 936 So. 2d 747 (Fla. 4th
Dist. Ct. App. 2006).

law to written and implied warranty claims made under the Act.")
(citing <u>Walsh</u>, 807 F.2d at 1012);[66] <u>Fedrick v. Mercedes-Benz USA,
LLC</u>, 366 F. Supp. 2d 1190, 1200 n.14 (N.D. Ga. 2005); <u>Bussian v.
DaimlerChrysler Corp.</u>, 411 F. Supp. 2d 614, 624-25 (M.D.N.C. 2006);
<u>In re Sony PS3 "Other OS" Litigation</u>, 551 F. App'x 916, 920 (9th
Cir. 2014).

In opposing this authority, Plaintiffs quote briefly from
several opinions for the proposition that "what constitutes a
'written warranty' and the duty not to breach obligation(s)
thereunder, while often derived from state law, are expressly
dictated by the federal law in this instance given the MMWA."[67]
Because none of the cases cited by Plaintiffs dealt with the
predominance requirement for certifying a national MMWA class, the

---

[66]<u>See</u> <u>Pitre v. Yamaha Motor Co., Ltd.</u>, 51 F. Supp. 3d 644,
667-68 (E.D. La. 2014) ("Three Federal Circuit Courts have
concluded that state law governs warranty claims under the MMWA,
'except as otherwise prescribed with particularity in Magnuson-Moss
itself.' Although the United States Court of Appeals for the Fifth
Circuit has not addressed whether federal law or Louisiana law
governs the determination of whether a warranty limitation is
'conscionable,' that court has held that 'when federal law operates
in an area historically regulated by states, courts have required
a "clear statement" by Congress of an intent to preempt.'
'Cognizant of this presumption favoring the validity of state law,'
the Fifth Circuit has 'eschewed interpretations of Magnuson-Moss
"that would significantly affect the federal-state balance." . . .
No Louisiana court, and no Federal Court sitting in Louisiana,
appears to have addressed the extent to which the MMWA affects
Louisiana law pertaining to the conscionability of contracts or to
warranty limitations, and the Court, finding no clear statement
that the MMWA preempts Louisiana law on this point, now turns to
Louisiana law to identify the relevant rule of decision.").

[67]Opposition to Motion to Strike, Docket Entry No. 20, p. 11.

issue of applying multiple states' laws was not before those courts and those opinions are not relevant to the issue before this court.

The court concludes the reasoning of Walsh and the courts that have followed is persuasive and consistent with Fifth Circuit precedent.  See Boelens, 748 F.2d at 1061 (The MMWA provides "minimum disclosure standards for written consumer product warranties and defin[ing] minimum content standards for such warranties.").  The Amended Complaint alleges that "15 U.S.C. §[ ]2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty."[68]  As Walsh and other cases recognize, the express warranty law of each state will apply to this claim.  In the Fifth Circuit, the burden of applying the warranty law of each jurisdiction defeats predominance and, thus, national class certification.  See Cole, 484 F.3d at 724-25.  Therefore, the court will grant Defendants' Motion to Dismiss as to all claims asserted by Plaintiffs on behalf of a putative National Class for alleged violations of the MMWA.

3.   Plaintiffs' Texas Class Allegations Regarding
     Unmanifested Defects

The Amended Complaint defines a Texas Subclass as:  "All entities and natural persons who, from July 2, 2011 to present, purchased an American Water Heater Company branded residential gas

---

[68]See Amended Complaint, Docket Entry No. 14, p. 15 ¶ 57.

-43-

water heater in the State of Texas that was equipped with a plastic drain valve."[69] Defendants argue that Plaintiffs cannot maintain breach of express or implied warranty claims for unmanifested defects under Texas law.[70]

Generally, under Texas law "[t]o establish a breach of warranty claim, a plaintiff must prove the existence of a warranty and that the breach thereof caused the plaintiff's injuries." Munoz v. Gulf Oil Co., 732 S.W.2d 62, 65 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). However, the Texas Supreme Court has recognized that "[a] person who buys a defective product can sue for economic damages, but the law is not well developed on the degree to which the defect must actually manifest itself before it is actionable." DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299, 304 (Tex. 2008). "[T]he law in most states (including Texas) is unclear on whether to permit express warranty claims for unmanifested defects." Id. (quoting Compaq Computer Corp. v. Lapray, 135 S.W.3d 657, 679 (Tex. 2004)) (quotations omitted). In a footnote, the Texas Supreme Court stated:

> We do not reach the issue in this case but note that, in
> varying contexts, our courts of appeals have reached

---

[69]Amended Complaint, Docket Entry No. 14, p. 10. Plaintiffs assert claims for breach of express warranty, breach of implied warranty of merchantability, violation of the MMWA, and declaration relief on behalf of the Texas Subclass. See id. at 12, 13, 15, 16 (the third and fourth claims are asserted on behalf of the National Class, or in the alternative, on behalf of the Texas Subclass).

[70]See Motion to Strike, Docket Entry No. 15, pp. 18-23.

different conclusions on whether parties may recover
damages for unmanifested defects. Compare Tracker
Marine, L.P. v. Ogle, 108 S.W.3d 349, 362 (Tex.
App.—Houston [14th Dist.] 2003, no pet.) (noting that
benefit of the bargain damages for unmanifested defects
"look[ ] suspiciously like a claim for fear of future
injury to property, which Texas has rejected") (citation
omitted) with Microsoft Corp. v. Manning, 914 S.W.2d 602,
609 (Tex. App.—Texarkana 1995, writ dism'd) (recognizing
breach of warranty claim for unmanifested defect: "We
believe that, if appellees prove that an individual
defect exists in all original MS-DOS 6.0 software, it is
not necessary for the purchasers to actually suffer a
loss of data as a result of that defect for them to
suffer damage. They have received less than they
bargained for when they acquired the product.").

Compaq, 135 S.W.3d at 679 n.15. Tracker Marine, 108 S.W.3d at 362,

involved a boat, while Manning, 914 S.W.2d at 609, involved

unmanifested defects in software. The Manning court distinguished

Tracker Marine:

> Software . . . is not like tires or cars. . . . [which]
> have a distinctly limited usable life. At the end of the
> product's life, the product and whatever defect it may
> have had pass away. If a defect does not manifest itself
> in that time span, the buyer has gotten what he bargained
> for. Software's useful life, . . . is indefinite. Even
> though the defect is not manifest today, perhaps because
> the user is not using the data compression feature, it
> may manifest itself tomorrow. The only way for an MS-DOS
> 6.0 buyer to avoid the possibility of injury is to pay
> for the upgrade, never use the data compression feature,
> or use another operating system. The buyer never gets
> what he bargained for, i.e., an operating system with an
> effective data compression feature.

Id.[71]

---

[71]Texas does not allow damages for fear of future injury to
property. City of Tyler v. Likes, 962 S.W.2d 489, 500 (Tex. 1997)
(rejecting mental anguish claim based on plaintiff's fear her home
would flood again). Tracker Marine, 108 S.W.3d at 362 ("Benefit-
(continued...)

-45-

A water heater, like a tire or car, has a limited usable life. Federal courts have made similar findings with other consumer products. For example, in a case involving a boat, the plaintiffs sued under the MMWA predicated on breach of the implied warranty of fitness for a particular purpose. Coghlan v. Aquasport Marine Corp., 73 F. Supp. 2d 769, 770 (S.D. Tex. 1999). The court held that "[A] plaintiff's burden of alleging damages is not discharged by simply postulating some purely hypothetical or inchoate injury which may or may not manifest itself in the future. . . . [F]or a plaintiff's damages to be legally cognizable the plaintiff must have already suffered some sort of concrete, actual, palpable injury." Id. at 772.[72] The court examined the complaint stating,

---

[71] (...continued)
of-the-bargain. This claim asserts economic injury at the moment of the purchase because the boats were not as represented. In other words, buyers who knew about the wood in these boats would pay less than the class members did, as they would fear future problems from rotting. The Seventh Circuit has opined that most states would not recognize such a damage claim; it also looks suspiciously like a claim for fear of future injury to property, which Texas has rejected.").

[72] See id. at 772-73 ("This Court is hardly alone in requiring plaintiffs to allege palpable and concrete damages. '[T]he law grants no cause of action for inchoate wrongs. However egregious the legal fault, there is no cause of action for negligence or products liability until there is actual loss or damage resulting to the interests of another.'") and collecting cases. See In re Air Bag Products Liability Litigation, 7 F. Supp. 2d 792, 795 (E.D. La. 1998); Briehl v. General Motors Corp., 172 F.3d 623, 628 (8th Cir. 1999); Ford Motor Co. v. Rice, 726 So. 2d 626, 627 (Ala. 1998); In re General Motors Anti-lock Brake Prod. Liab. Litig., 966 F. Supp. 1525, 1530 (E.D. La. 1997); Weaver v. Chrysler Corp., 172 F.R.D. 96, 100 (S.D.N.Y. 1997); American Suzuki Motor Co. v.
(continued...)

"[a]s best the Court can determine, Plaintiffs [allege] that the fiberglass coated deck of their boat has, in theory, a heightened propensity to deteriorate.   In other words, Plaintiffs complain they have been injured by the unexpected presence of a small amount of fiberglass coated wood because it is <u>possible</u> the coated wood might rot, which <u>might</u> necessitate expensive repairs in the future." <u>Id.</u> at 773.   The court held that the Plaintiffs failed to allege the sort of concrete and palpable injuries required to state a claim for relief.   <u>Id.</u>   <u>See also</u> <u>Martin v. Ford Motor Co.</u>, 914 F. Supp. 1449, 1455 (S.D. Tex. 1996).

Federal courts in other jurisdictions have rejected similar claims under Texas law.   In <u>In re General Motors Type III Door Latch Litigation</u>, Nos. 98-C-5836, MDL-1266, 2001 WL 103434, at *1-2 (N.D. Ill. Jan. 31, 2001), three plaintiffs sought to represent "a class of all Texas residents who own a General Motors vehicle equipped with an unmodified Type III door latch."   Two of the plaintiffs had been involved in accidents in which their doors popped open, but neither was injured.   The court found that:

> [A]ll plaintiffs have this in common: they must show that
> GM's conduct caused them to suffer compensable injuries.
> GM argues that plaintiffs-none of whom have been
> physically injured or spent money to fix a defective door

---

[72](...continued)
<u>Superior Court</u>, 44 Cal. Rptr. 2d 526, 531 (1995); <u>Barbarin v. General Motors Corp.</u>, No. Civ. 84-0888, 1993 WL 765821, at *2 (D.D.C. Sept. 22, 1993); <u>Yost v. General Motors Corp.</u>, 651 F. Supp. 656, 657-58 (D.N.J. 1986); <u>Feinstein v. Firestone Tire and Rubber Co.</u>, 535 F. Supp. 595, 602 (S.D.N.Y. 1982).

> latch-have offered no evidence of injury. . . . The
> weight of authority in Illinois, Texas and other
> jurisdictions supports my finding that plaintiffs cannot
> prove an essential element of their case.

Id. at *2. Specifically, with respect to the Texas plaintiffs, the

court noted that "[c]ourts interpreting Texas law have generally

opposed the idea that consumers should be able to recover damages

for an allegedly defective product which has not yet malfunctioned

or caused injury." Id. at *3. See also Jackson v. General Motors

LLC, No. A-14-CA-1059-SS, 2015 WL 1003859, at *3 (W.D. Tex.

March 5, 2015).

Plaintiffs argue that they may sue on behalf of class members

whose heaters have not manifested defects because plaintiffs may

sue on warranty claims, which are contractual in nature, for

"benefit of the bargain" damages in Texas.[74] See Tex. Bus. & Com.

Code § 2.714(b) ("The measure of damages for breach of warranty is

the difference at the time and place of acceptance between the

value of the goods accepted and the value they would have had if

they had been as warranted . . ."). Plaintiffs cite Chief Justice

Jefferson's dissent in DaimlerChrysler Corp., 252 S.W.3d at 309.

The trial court in that case denied the defendant's motion for

summary judgment and certified a class, finding:

> Plaintiffs' claims are not based on any hypothetical
> defect in the [] buckle that may, or may not, manifest
> itself in the future. Instead, Plaintiffs' allege that

---

[74]See Opposition to Motion to Strike, Docket Entry No. 20,
p. 21.

> the sale of [] buckles breached warranties and consumer
> remedies because each buckle was sold in violation of
> federal standards, industry standards, and Defendant's
> internal standards and that each [] buckle has manifested
> this breach from the moment it was sold until the
> present.

Id. at 302-03.  On appeal, the majority held that the plaintiffs

lacked standing to assert class claims, and dismissed the case,

recognizing that "[a] person who buys a defective product can sue

for economic damages, but the law is not well developed on the

degree to which the defect must actually manifest itself before it

is actionable."  Id. at 304, 307.

Justice Jefferson dissented:  "Absent a full record, in which

the claim's contours can be thoroughly vetted, I am not prepared to

say the plaintiffs' claims of economic injury are conclusively

unsound.  At least one court has distinguished between no-injury

product liability claims, which are based in tort, and warranty

claims based on unmanifested defects, which are contractually

based."  Id. at 309 (citing Coghlan, 240 F.3d at 455 n.4).[75]

Plaintiffs thus argue that the water heaters were defective at the

moment of purchase and the defect "is manifest today, because the

economic value of the product they purchased is not as warranted."[76]

---

[75]The Fifth Circuit in Coghlan, 240 F. 3d at 452-55, addressed
benefit of the bargain damages for fraud, unjust enrichment, breach
of contract, negligent misrepresentation, and deceptive trade
practices, but did not discuss breach of warranty.

[76]See Opposition to Motion to Strike, Docket Entry No. 20,
p. 22.

Plaintiffs also cite Cole, 484 F.3d at 719, in support of their arguments because the Fifth Circuit held that the plaintiffs had standing to pursue their claims on behalf of a nationwide class including members whose airbags had not deployed inadvertently.[76] However, predominance for class certification failed in Cole because "many jurisdictions do not permit the recovery of economic loss in vehicle defect cases where the vehicle has performed satisfactorily and has never manifested the alleged defect." Id. at 729. The Fifth Circuit rejected the Cole plaintiffs' argument, saying, "Plaintiffs attempt to sidestep this glaring obstacle by distinguishing their claim as one brought under a contract theory (for breach of warranty) instead of products liability. This maneuver does not escape the reality that some jurisdictions require that the alleged defect manifest itself regardless of whether the claim is brought under contract or tort." Id. The court did not decide what the result would be under Texas law, but cited two cases indicating that Texas law does not allow recovery for unmanifested defects. Id. (citing Briehl v. General Motors Corp., 172 F.3d 623, 627-28 (8th Cir. 1999); In re Air Bag Products Liability Litigation, 7 F. Supp. 2d 792, 805 (E.D. La. 1998).

Given the extensive body of case law indicating that Texas law does not permit plaintiffs to recover unless they have experienced

---

[76]The language Plaintiffs cite is from the section discussing standing, not warranty claims. See id. at 22-23.

some injury to a product with a limited usable life, the court is not persuaded by Plaintiffs' arguments. Therefore, the court will grant Defendants' Motion to Dismiss as to claims asserted by Plaintiffs on behalf of putative Texas class members whose water heaters have not manifested any defects.

### IV.  <u>Conclusion and Order</u>

For the reasons stated above, Defendant's Motion to Dismiss First Amended Complaint (Docket Entry No. 16) is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs' claim for injunctive relief is **DISMISSED** for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants' Motion to Strike Class Allegations (Docket Entry No. 15) is **GRANTED**. Plaintiffs' claims for violation of the MMWA on behalf of a National Class are **DISMISSED** because Plaintiffs cannot establish predominance, a necessary prerequisite for class certification. Plaintiffs' claims on behalf of putative Texas Subclass members whose water heaters have not manifested a defect are **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(6).

The court is also skeptical that Plaintiffs can maintain a Texas class, at least as to the MMWA claim. However, since Plaintiffs have yet to move for class certification the court will allow Plaintiffs twenty days from the entry of this Memorandum Opinion and Order in which to amend their complaint to properly

define a Texas class and to move for certification demonstrating that they can meet the requirements of Federal Rule of Civil Procedure 23(a) and (b), as well as the additional amount-in-controversy and named-plaintiff requirements of 15 U.S.C. § 2310(d) applicable to a Magnuson-Moss Warranty Act claim.[78]

> **SIGNED** at Houston, Texas, on this the 7th day of April, 2016.

_____
                          SIM LAKE
         UNITED STATES DISTRICT JUDGE

---

[78]If Plaintiffs properly establish their representative capacity, the named plaintiffs will also be required to provide Defendants proper notice and opportunity to cure before any MMWA claims may proceed.  See 15 U.S.C. § 2310(e).